COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2025AP1832-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2021CF246

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARCIN STASZAK,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Columbia County: TODD J. HEPLER, Judge.  *Affirmed*.

Before Graham, P.J., Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Marcin Staszak appeals a judgment convicting him of operating a motor vehicle while intoxicated as a fifth or sixth offense, among other things.  On appeal, Staszak challenges the circuit court's denial of his motion to suppress the results of a warrantless blood draw, arguing that exigent circumstances did not justify drawing his blood without a warrant.  We reject Staszak's argument and affirm.

## BACKGROUND

¶2     The following facts are taken from the criminal complaint and the evidentiary hearing on Staszak's motion to suppress.

¶3     The events that led to the blood draw at issue here began when a vehicle was reported stolen in Columbia County.  An officer located the stolen vehicle and attempted to stop it, but its driver, who was later identified as Staszak, drove off.  A high-speed chase ensued and then ended when the stolen vehicle crashed into another vehicle, causing that vehicle to overturn.

¶4     Staszak attempted to flee the crash scene on foot with a bottle of Jack Daniels in hand, but he was quickly apprehended by Deputy Brian Johnson and another officer.  Upon making contact with Staszak, Johnson observed that Staszak exhibited signs of intoxication.  According to Johnson, Staszak's eyes were "glassy" and "bloodshot," he was "unsteady in his balance," and there was a "strong and overpowering odor" of alcohol emanating from his person.  Johnson also observed that Staszak exhibited signs of injury, and Johnson was concerned about Staszak's physical condition given the "significant" nature of the crash.

¶5     Staszak was handcuffed and placed in the backseat of Johnson's patrol vehicle, and Johnson, for at least some of the time that followed, attended to

2

other duties at the crash scene. Staszak does not dispute that there was probable cause to arrest him at that time, both for his actions with respect to the stolen vehicle and also for OWI-related offenses.

¶6 When EMS arrived, Staszak was moved to an ambulance to receive medical care. Staszak asked Johnson to stay with him, and Johnson remained in the ambulance with Staszak for approximately 45 minutes while he was being treated by EMS. At some point during this period, Johnson read Staszak his *Miranda* rights.[1]

¶7 EMS determined that Staszak required additional medical care and transported him to a nearby hospital. Johnson followed the ambulance in his patrol vehicle. Shortly after arriving at the hospital, Johnson read Staszak the "Informing the Accused" form[2] and asked if Staszak was willing to consent to an evidentiary blood test. Staszak responded, "I am not in the right state of mind to make a decision," and Johnson took this response as a refusal.

¶8 Johnson informed emergency room personnel that he would be seeking a warrant to draw Staszak's blood. However, Staszak's condition was

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966). The now-familiar "*Miranda* warnings" inform the suspect that they have the right to remain silent; that anything they say can be used against them in a court of law; that they have the right to the presence of an attorney; and that if they cannot afford an attorney, one will be appointed prior to questioning if they so desire. *Id.* at 479.

[2] A law enforcement officer who arrests a driver for an OWI-related offense and seeks chemical testing pursuant to the implied consent law is required to read the Informing the Accused script to the driver. *See* WIS. STAT. § 343.305(4) (2023-24). This script provides standard language advising the driver of certain consequences of submitting to testing and certain consequences of refusing.

All references to the Wisconsin Statutes are to the 2023-24 version.

deteriorating, and emergency room personnel began prepping Staszak for the administration of IV fluids and a liquid dye injection. Johnson asked if this treatment could wait until he could obtain a warrant, but was informed that Staszak's "blood pressure was dropping," that "his condition was worsening quite quickly," and that emergency room personnel would not be "waiting to administer care."

¶9 At that point Johnson asked emergency room personnel to draw Staszak's blood without a warrant, and the blood draw occurred approximately two hours after the crash. The results of the test later revealed that Staszak's blood alcohol concentration was above the legal limit. The State charged him with operating a motor vehicle while under the influence as a fifth or sixth offense; fleeing and eluding an officer; and recklessly endangering safety, among other things.

¶10 Staszak moved to suppress the results of the blood test, arguing that the warrantless search violated his Fourth Amendment rights. The State opposed the motion, arguing that the warrantless search was justified based on exigent circumstances.

¶11 Johnson, who was the sole witness to testify at the evidentiary hearing on the motion to suppress, testified as follows. Upon making contact with Staszak at the crash scene, Johnson had reason to believe that Staszak had been intoxicated when he operated the stolen vehicle. However, Johnson did not immediately begin an OWI investigation because Staszak's "physical care was more important," and medical personnel were in the process of determining "the extent of [his] injuries." After Staszak refused to consent to a blood test at the hospital, Johnson was "concern[ed]" that, due to Staszak's deteriorating condition

and need for immediate advanced care, Johnson might lose "access" to Staszak before he could obtain a warrant authorizing a blood draw. Johnson was also concerned about obtaining a blood sample from Staszak within a reasonable "time frame" from the crash.

¶12 Following argument from both sides, the circuit court denied the motion to suppress.[3] The court determined that there was a "sufficient exigency" for a warrantless blood draw at the time Staszak's blood was drawn based on Staszak's deteriorating medical condition and his need for more immediate care. The court determined that Johnson's concern about losing access to Staszak based on his emergency medical needs was reasonable, given that emergency room personnel do not possess "crystal balls" and it is difficult to predict "with any measure of accuracy" the likely course and timing of treatment in a situation like this.

¶13 However, this did not end the circuit court's inquiry. As the court explained, the real "debate" was whether Johnson's conduct *prior to Staszak's hospitalization* was reasonable, or whether Johnson created the exigent situation by unreasonably delaying the warrant application process. The court determined that Johnson did not unreasonably delay. Among other things, the court found that the crash scene was an "active emergency" situation and that Johnson and the other officers were not "just standing around [and] doing nothing," but attending to various tasks. Although the court acknowledged the possibility that Johnson could have made "different choices," it highlighted Johnson's 20 years of

---

[3] The Honorable W. Andrew Voigt decided Staszak's motion to suppress. The Honorable Daniel George took Staszak's plea, and the Honorable Todd J. Hepler entered the judgment of conviction.

5

experience and stated that it was not appropriate for the court to "second guess law enforcement's decision making" or "the order of events" and priorities in emergency situations such as these. Thus, the court stated, "I just don't see that [Johnson] created this exigent circumstance in any meaningful way."

¶14 Staszak pled no contest to operating a motor vehicle while intoxicated as a fifth or sixth offense and other counts, and he now appeals the circuit court's denial of his motion to suppress.

## DISCUSSION

¶15 A suppression motion poses a question of constitutional fact which is a mixed question of law and fact. *State v. Tomaszewski*, 2010 WI App 51, ¶5, 324 Wis. 2d 433, 782 N.W.2d 725 (2009). We review the circuit court's findings of historical fact under the clearly erroneous standard, and we independently review the application of constitutional principles to those facts. *Id.*

¶16 The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Blood tests to determine alcohol concentration are considered Fourth Amendment searches, and, if conducted without a warrant, such searches are presumptively unreasonable unless they fall within a recognized exception to the warrant requirement. *Missouri v. McNeely*, 569 U.S. 141, 148 (2013). One such exception is the exigent circumstances exception, which applies "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable." *Id.* at 148-49. In other words, an exigency exists when there is "insufficient time to obtain a warrant" and "the need for a search is urgent." *State v. Tullberg*, 2014 WI 134, ¶30, 359 Wis. 2d 421, 857 N.W.2d 120.

6

¶17    One category of exigency that may support a warrantless search is the need "to prevent the imminent destruction of evidence." *McNeely*, 569 U.S. at 149. The destruction of evidence is of particular concern in drunk driving cases because alcohol naturally dissipates in the bloodstream with the passage of time. *See State v. Dieter*, 2020 WI App 49, ¶12, 393 Wis. 2d 796, 948 N.W.2d 431. This affects "the quantity of alcohol that [blood] testing will reveal" and the "evidentiary value" of such tests. *See id.*; WIS. STAT. § 885.235 (providing that a blood test conducted within three hours of an alleged drunk driving incident is admissible in court without expert testimony, but a blood test conducted after the three-hour mark requires expert testimony to be admissible).

¶18    Given these realities, the natural dissipation of alcohol over time is relevant to the "exigent circumstances determination" and "may … support" a finding of exigency "in a given case." *Dieter*, 393 Wis. 2d 796, ¶13; *see also McNeely*, 569 U.S. at 156. However, the fact that alcohol dissipates over time does not "categorically" establish an exigency justifying a warrantless blood draw, and courts must instead look to the "totality of the circumstances." *McNeely*, 569 U.S. at 156.

¶19    Relevant to the totality of the circumstances analysis is whether officers are dealing with a "run-of-the-mill" drunk driving incident, *see State v. Hay*, 2020 WI App 35, ¶¶8, 19, 392 Wis. 2d 845, 946 N.W.2d 190, or some kind of accident or emergency, *see, e.g.*, *Schmerber v. California*, 384 U.S. 757, 770-71 (1966); *Mitchell v. Wisconsin*, 588 U.S. 840, 854 (2019); *State v. Dalton*, 2018 WI 85, ¶51, 383 Wis. 2d 147, 914 N.W.2d 120. In the latter category of cases, Wisconsin courts have often determined that the exigent circumstances exception applies if officers did not apply for a warrant because they were reasonably prioritizing "safety" or "medical needs" or other critical responsibilities resulting

from an emergency. *See Dalton*, 383 Wis. 2d 147, ¶¶44-54; *Dieter*, 393 Wis. 2d 796, ¶17; *Tullberg*, 359 Wis. 2d 421, ¶¶43-51. Based on the record before us, these are the circumstances here.

¶20 As noted, the OWI investigation in this case occurred in the context of a serious car crash involving multiple victims. Johnson, who was one of the first responders on scene, almost immediately had reason to believe that Staszak operated the stolen vehicle while intoxicated. However, Johnson also observed that Staszak appeared to be injured and determined that his medical care "should take priority" over any OWI investigation. *See Mitchell*, 588 U.S. at 854 (whether "some other factor creates pressing health, safety, or law enforcement needs that would take priority over a warrant application" is relevant to the exigency determination).

¶21 Staszak was then brought to the hospital, where Johnson promptly sought to obtain Staszak's consent for a blood test. After Staszak refused, Johnson intended to apply for a warrant, but Staszak's condition "was worsening," and Johnson was informed by emergency room personnel that Staszak's medical care could not wait. At this point, the "three-hour window to accomplish a presumptively admissible and accurate blood draw" was drawing to a close, *see Dalton*, 383 Wis. 2d 147, ¶52; WIS. STAT. § 885.235(1g), and there were uncertainties surrounding Johnson's condition and the timeline of his care. The circuit court determined that under the circumstances, Johnson reasonably thought that if he waited until he could obtain a warrant, he might lose access to Staszak, and in turn, the ability to draw Staszak's blood in a timely manner. The court's determination in this regard was not erroneous, and we conclude that based on the totality of the circumstances, the exigent circumstances exception to the warrant requirement justified the search.

¶22 Staszak makes three arguments to the contrary that we now consider and reject.

¶23 First, Staszak argues that it was not reasonable for Johnson to believe that "he would be separated from … Staszak for an extended period of time" at the hospital. Staszak points out that Johnson did not testify about the "the extent" of Staszak's treatment, nor that Staszak was being "wheel[ed] … away," that he was "losing consciousness," or that "anyone asked [Johnson] to leave the room so medical assistance could be provided." Thus, Staszak argues, there was no basis for Johnson to believe that if he did not have Staszak's blood drawn at that moment, he risked being unable to obtain an accurate blood sample at a later point after a warrant was obtained.

¶24 When evaluating whether an officer's beliefs about exigent circumstances are reasonable, we consider "the circumstances known to [the officer] at the time." *Dalton*, 383 Wis. 2d 147, ¶43. We do not "'indulge in unrealistic second-guessing' of … 'swift, on-the spot decisions'" when officers are faced with "multifaceted and chaotic circumstances." *Id.*, ¶49 (citing *United States v. Sokolow*, 490 U.S. 1, 11 (1989)). Here, Johnson was told by emergency room personnel that Staszak's "blood pressure was dropping," "that his condition was worsening quite quickly," and that they would not be waiting to administer care. This occurred after Staszak had just been involved in a serious vehicle collision that required his hospitalization. Based on these factual circumstances, it

was not unreasonable for Johnson to believe that his ability to obtain a timely blood sample could be compromised if he waited to obtain a warrant.[4]

¶25    Second, Staszak argues that there was "ample time" for Johnson to have obtained a warrant at the crash scene. Specifically, Staszak points out that Johnson was with him at the crash scene for "approximately one hour" before he was transported to the hospital, and Staszak contends that Johnson was not dealing with "other more pressing matters" during this period. Given these purported circumstances and that Johnson had probable cause for a warrant almost immediately after making contact with Staszak, Staszak argues that it was unreasonable for Johnson not to apply for a warrant at some point during this hour-long period.

¶26    We are not persuaded that Johnson's failure to apply for a warrant during this period was unreasonable. In reaching this conclusion, we separately analyze the first 15 minutes in which Staszak was detained in Johnson's patrol vehicle, and the remaining 45 minutes in which Johnson accompanied Staszak in the ambulance as he was being treated by EMS.

¶27    With respect to the first 15-minute period, as noted, Johnson had just apprehended Staszak, who had attempted to flee on foot. Johnson then placed Staszak in the back of his patrol vehicle and attended to duties at the accident scene. The circumstances of the emergency were still unfolding, and it was not

---

[4] Relatedly, Staszak also argues that "hospital staff administering an IV did not amount to exigent circumstances." We need not address this argument because our decision about exigent circumstances is grounded on the totality of the circumstances, not the administration of the IV alone. *See* ***Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

unreasonable for Johnson to hold off on his OWI investigation during this initial 15-minute period. *Tullberg*, 359 Wis. 2d 421, ¶49 (providing that a "law enforcement officer … who is confronted with an accident scene[] should first attend to the emergency circumstances at hand").

¶28 The more difficult question is the remaining 45-minute period when Johnson stayed with Staszak while he received medical care in an ambulance parked at the crash scene. As best we understand, Johnson was merely present and not actively assisting with any medical care or tasked with any duties aside from attending to Staszak. Presumably, he could have applied for a warrant at some point during this period. As Johnson explained at the suppression hearing, he "routinely" applies for warrants while "on-scene" with suspects and is able to do so by submitting "the OWI warrant form" to an on-call judge via email. After the judge reviews the warrant, Johnson is connected to a recorded line where he swears to the information provided in the warrant affidavit and he then is able to print the warrant remotely from his patrol vehicle. Johnson described a streamlined process, and based on the record before us, it appears that Johnson could have begun the warrant application process, or at the very least asked for Staszak's consent for a blood test, at some point during this 45-minute period.

¶29 However, the fact that Johnson could have initiated certain tasks—such as seeking Staszak's consent for a blood test or beginning the warrant application process—does not necessarily render his decision to wait unreasonable. *See Dalton*, 383 Wis. 2d 147, ¶49 ("When presented with multifaceted and chaotic circumstances like those presented here, law enforcement needs flexibility to determine its priorities."). The circuit court appeared to credit Johnson's testimony that his biggest concern at that time was Staszak's physical condition, and that EMS was in the process of determining "the extent of

[Staszak's] injuries." Given that EMS was actively treating Staszak, it was not unreasonable for Johnson to avoid any activity that might interrupt their efforts. Nor was it unreasonable for Johnson to wait to begin his investigative activities in hopes that Staszak's condition would stabilize after treatment. Police have many responsibilities at an accident scene, and "[t]his court is not in the business of second-guessing law enforcement's reasonable allocation of resources in a complex and evolving situation." *Id.*, ¶¶49-50.

¶30 Finally, Staszak points out that Johnson had time to read Staszak his *Miranda* rights while he was being treated by EMS. The argument appears to be that if Johnson had time to read Staszak his *Miranda* rights, he also had time to read the "Informing the Accused" form and to ask for Staszak's consent.

¶31 The problem with this argument is that our inquiry does not turn on whether Johnson had time to engage in a certain activity. Rather, the dispositive question is whether Johnson's choices were reasonable based on the totality of the circumstances. Here, the record reflects that Johnson read Staszak his *Miranda* rights because Staszak was making statements about his actions leading up to the crash and Johnson "wanted him to be aware of his rights" before making any further statements. This was a reasonable decision based on the statements Staszak was making, and Staszak fails to persuade us that it bears on Johnson's decision to hold off on initiating an OWI investigation.

## CONCLUSION

¶32 For the reasons explained above, we conclude that the warrantless blood draw was justified based on exigent circumstances.

*By the Court.*—Judgment affirmed.

12

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.